ARTHUR H. JONES, APPELLEE, V. MOTOR SECURITIES COMPANY ET AL., APPELLANTS.

FILED JULY 14, 1936. No. 29568.

Beghtol, Foe & Rankin and J. E. Ray, for appellants.

Stiner & Boslaugh and Lester R. Stiner, contra.

Heard before GOSS, C. J., ROSE and DAY, JJ., and ELDRED and TEWELL, District Judges.

ELDRED, District Judge.

This is a suit in equity instituted in the district court for Adams county, by Arthur H. Jones, plaintiff, appellee, against Motor Securities Company, Robert O. Graham and Frank P. Uerling, defendants, appellants, for an accounting; Motor Securities Company, a corporation, was engaged in dealing in finance paper evidencing indebtedness secured by liens on automobiles. The outstanding stock of such company was owned by the plaintiff and the individual defendants; plaintiff Jones, 175 shares, defendant Graham, 225 shares, and defendant Uerling, 100 shares. From a decree in favor of plaintiff, defendants appeal.

The rights of the parties in this proceeding rest, to a considerable extent, upon the construction and effect of certain findings and the judgment entered thereon on April 15, 1933, in a prior action between the same parties.

By the decree in the instant case it was found and determined that plaintiff Jones was entitled to receive sums aggregating $16,450 as stock reduction payments, about which there appear no contention in this court. Such decree also found and determined that defendants Graham and Uerling had wrongfully diverted and paid to themselves as back salary for 1931 and 1932 the sum of $9,375, which should be restored; that they had received excessive payments as salary from January, 1933, Graham to August 15, 1933, and Uerling to March 31, 1934, aggregating $1,731, which should be restored; and that legal expenses were paid by the defendants from the corporate assets aggregating $1,175, which were excluded by the decree of April 15, 1933, which should be restored; said three items aggregating $12,281. The court found said sum of $12,281, plus $2,669.58 cash assets of company, aggregating $14,-950.58, was for distribution; to plaintiff, $5,232.71, defendant Graham, $6,727.75, and defendant Uerling, $2,990.12.

With reference to the item of $9,375: The judgment in

a former case, No. 9114, of district court for Adams county, involving same parties, entered on April 15, 1933, is founded upon a number of findings of fact, with the ultimate finding that the plaintiff in that case, Jones, was entitled to recover $12,490, for which a judgment was rendered.

On May 1, 1933, the directors of Motor Securities Company held a meeting, there being present Robert O. Graham, Margaret L. Graham and Frank P. Uerling, at which they adopted a resolution as follows:

"Resolved, that inasmuch as the district court for Adams county, Nebraska, has fixed the salaries of the executive officers of the company for 1931 and 1932 in a decree rendered April 15, 1933, and has further made certain findings as to dividends; and

"Whereas, it is the desire of the directors to follow the direction of said decree as long as the same remains in effect;

"Now, therefore, be it resolved, that the salaries of the executive officers, to wit, R. O. Graham and F. P. Uerling, be fixed for the year 1933 as provided in said decree, to wit, R. O. Graham, Seven Thousand Four Hundred Twenty-five Dollars ($7,425) per year; F. P. Uerling, Five Thousand Two Hundred Dollars ($5,200) per year. The officers are directed to pay to R. O. Graham and F. P. Uerling any sums due them for 1931 and 1932 for salaries as fixed by said court and not heretofore paid them."

Pursuant to the foregoing resolution, there was paid to defendant Graham, as balance 1931 salary, $1,200, as balance 1932 salary, $4,800, and to the defendant Uerling, as balance 1931 salary, $675, and as balance 1932 salary, $2,700; these sums aggregating $9,375, the first sum the court ordered restored. It is contended by the defendants that these payments were made pursuant to decree of April 15, 1933, and said resolution above set out; that they were for back pay, plus a 35 per cent. dividend, minus what Uerling and Graham had already drawn as salary.

In answer to such contention, the appellee urges, first,

that the decree of April 15, 1933, Case No. 9114, does not fix the salaries for the years 1931 and 1932; and, second, if the decree should bear such construction, such issue was not presented by the pleadings and the decree to that extent would be invalid. The resolution of the board of directors heretofore set out recites that the court "has fixed the salaries of the executive officers of the company for 1931 and 1932 in a decree rendered April 15, 1933." Is that conclusion correct? Particular reference is made in appellants' brief to paragraphs 4, 5, 6, 7, 8, 11 and 16 of the findings of the court in such former decree. By paragraphs 4, 5 and 6 of such findings the court sets out the method found to have been adopted and used in the distribution of the earnings of Motor Securities Company during 1929 and prior years. By paragraph 7 of the findings the method adopted for the distribution of the earnings for 1930 is set forth with a showing of the amount paid the defendants, and the payment to the plaintiff of the amount due him after suits were instituted by him to recover the same; and further recites: "There is this left for further consideration, the acts of the parties, more particularly in the conduct of their business for the years 1931 and 1932." Paragraph 8 recites jurisdiction of the court, and that it will determine as completely as may be the rights and liabilities of the parties concerning the subject-matter. By paragraph 9 it is found that at the annual stockholders' meeting in January, 1931, the actual owners of the common stock were Jones, Graham and Uerling. "The stock placed in the name of defendant John D. Carey was in truth and still is the stock of defendant Graham, and Carey's ownership and standing as a stockholder and officer were at all times ostensible only and for the purpose of assisting in the exclusion of the plaintiff, Jones." Paragraph 10 recites "that in said stockholders' meeting and in the subsequent conduct of the business the plaintiff, Jones, was by the individual defendants wrongfully excluded from the participation therein to which he was entitled." Paragraph 11 states "that the method adopted and used prior to the

years 1931 and 1932 for the distribution of profits or accumulations other than the regular 6 per cent. dividends to the holders of common stock has not been lawfully changed and the individual defendants have continued to use the same for distribution to themselves but have excluded the plaintiff therefrom." Paragraph 12 states "that the plaintiff is entitled to distribution and payment thereof to him on the same basis for the years 1931 and 1932." Paragraphs 13, 14 and 15 refer to matters not involved in this appeal; while by paragraph 16, the court finds: "That under the schedule in force in the years 1931 and 1932 the actual annual salary proportion to defendant Graham is $7,425, and to defendant Uerling is $5,200. The excess over such sums, respectively, is distribution of profits or surplus."

Then by paragraph 17, the court makes the ultimate finding that the plaintiff Jones should be paid, primarily from the funds of the Motor Securities Company, his proper distribution of the profits or accumulations for the years 1931 and 1932, aggregating, with interest, the sum of $12,490. On these findings the following judgment was entered:

"It is therefore now considered and decreed by the court that within 20 days the plaintiff Arthur H. Jones have, receive and recover from the defendants Motor Securities Company, Robert O. Graham and Frank P. Uerling, as aforesaid, the said sum of $12,490, with interest at 7 per cent. per annum thereof from this date.

"That the defendants Robert O. Graham and Frank P. Uerling within 20 days pay and restore to the Motor Securities Company the said sum of $5,000 with 7 per cent. from this date and receive from the corporate defendant the evidence of indebtedness of the James Chevrolet Company and proper assignment without recourse thereof.

"That defendants Robert O. Graham and Frank P. Uerling pay the costs of this case."

It will be noted that the court does not carry the findings into the judgment separately; the findings prior to para-

graph 17 merely leading up to the ultimate finding contained in paragraph 17 on which judgment was entered. The judgment does not purport to fix or determine any salaries, nor provide for the payment to or recovery of any back salary by any officer, and no reference is made thereto in any way; nor would the findings of the court justify such a judgment. As relating to the years 1931 and 1932, the findings of the court are set forth in the quotations from paragraphs 11, 12 and 16, just set out; with the ultimate finding for the recovery by plaintiff of the $12,-490. This falls far short of a finding and judgment or decree for back salary due to the defendants Graham and Uerling, or that they were entitled to receive any further sum on account of salaries for 1931 and 1932. That judgment speaks for itself. Before the court in the instant case could find that anything further was due Graham and Uerling on account of salaries, it would be necessary to go back of the findings and judgment in Case No. 9114, and look into the evidence in that case, which cannot be done in this action. The construction placed by the board of directors upon the findings and judgment of April 15, 1933, in Case No. 9114, shown by the resolution of the board, is clearly erroneous. Having reached the conclusion that the judgment of the district court entered in the former case, No. 9114, did not fix the salaries of executive officers of the Motor Securities Company for the years 1931 and 1932 or authorize the payment to them of any back salaries for those years, it becomes unnecessary to consider whether such issue was presented by the pleadings in that case.

As to the item of $1,731: At the regular meeting of the board of directors held January· 3, 1933, the salary of Robert O. Graham, president, was fixed at $575 a month, and the salary of Frank P. Uerling, secretary, at $335 a month. After decree in the former case, No. 9114, was entered on April 15, 1933, the board of directors, on May 1, 1933, adopted the resolution heretofore set out.

After the adoption of that resolution salaries were paid to Graham at $618.75 a month dating back to January 1,

1933, and continuing to August 15, 1933, or for seven and one-half months; and to Uerling at $433.33 a month dating back to January 1, 1933, and continuing to April 1, 1934, or for fifteen months. Graham thus received $43.75 a month as salary in excess of the rate fixed by the board of directors January 3, 1933, for the period of seven and one-half months, and Uerling received $98.33 as salary in excess of the rate fixed by such board on January 3, 1933, for the period of fifteen months.

The resolution of the board of directors under date of May 1, 1933, fixing salaries of executive officers of the company, purports to have been made in carrying out an order of the court in decree of April 15, 1933; that is, it assumes that for the years 1931 and 1932 the salaries were fixed by the decree in the former case; and appears to conclude such officers should be allowed the same salaries for the year 1933. In this the board of directors were acting on a wrong premise. We have already found that such decree did not fix the salaries for such officers for the years 1931 and 1932. No mention is made therein of salaries for the year 1933. Appellants in their brief state: "It is true that in January the directors fixed the salaries of these men at a somewhat lower amount, but it is within the discretion of the directors to revise and modify their findings." And the suggestion is made that the increased salaries were justified by the fact that the officers were engaged in a difficult service liquidating a company whose business, due to the attitude of a dissatisfied minority stockholder, and because of the depression, was growing less and less. According to record the earnings decreased from $31,529.56 in 1931 to $10,621.85 in 1933, during which year it ceased to do any finance business; and after June of that year, the only business requiring attention was the collection of finance paper. With knowledge of the decreasing business of the company, the directors, in January, 1933, fixed salaries at $575 and $335; then, after the judgment in the former case, entered on April 15, 1933, the board, assuming to act by virtue of that judgment, increased the salaries

dating back to January 1, 1933. We conclude that the decree did not justify the action of the board of directors, and that under the conditions existing the increase in amount of salaries was not warranted.

As to the item of $1,150: In the former decree, finding number 19 provides: "That the defendants Graham and Uerling shall be taxed with the costs of the case, and as between the parties no expense on account of this litigation shall be charged to the corporate defendant or paid from its funds."

The judgment entered on that finding provides: "That defendants Robert O. Graham and Frank P. Uerling pay the costs of this case." Defendant Uerling, called as a witness by plaintiff, testified: "Q. Mr. Uerling, in this former accounting case of Jones v. Graham was there any part of the expense of that lawsuit paid by the corporation and not reimbursed, court costs, attorney fees and otherwise? A. Yes, sir. Do you want the amounts? Q. Yes. A. February 7, 1931, $500; August 1, 1932, $125; June 9, 1933, $150; August 12, 1933, $250; December 12, 1932, $125; September 27, 1933, $25. Q. That was all? A. Yes, sir." On cross-examination by his own counsel: "Q. Mr. Uerling, these amounts you just read, who were they paid to? A. Part of that was paid to Beghtol & Foe and part of it to J. E. Ray. Q. You were asked if those were paid on account of the former accounting case and you said they were. What case did you mean; two cases have been tried before, both for an accounting? A. Well, the first item of $500, February 7, 1931, was a retainer fee. Q. What for? A. Paid by the company to have an attorney to consult with in matters of law. Q. That was paid to me? A. Yes, sir. Q. What was the next item paid for? A. For that $1,500 case. Q. Did the company pay out any fees to Mr. Ray or myself because of this one case tried here in which the court said the company should not pay the attorneys' fees, but that you and Mr. Graham should pay them? A. No, sir."

It was stipulated that former Case No. 9114 was com-

menced January 17, 1931. The $1,500 case, No. 9526, was commenced August 18, 1932. No other witness testified as to these items and no other evidence was submitted thereon. The parties to whom the payments were made were present and might have testified. The first item of $500 was paid 21 days after the commencement of Case No. 9114. The $1,500 suit, No. 9526, was commenced August 18, 1932. On redirect examination: "Q. What items or item was paid on account of $1,500 lawsuit, if any, as distinguished from the accounting case of Jones v. Graham, Uerling, Carey and the Motor Securities Company? A. All the other items outside of the $500." This, if correct, left $675 paid for attorneys' fees in the $1,500 case, the first item of $125 being paid by defendants prior to the commencement of that action against them. Considering the interest of the witness as a party adverse to the plaintiff and the circumstances disclosed by the record, the evidence of the witness Uerling, on his direct examination, is the more satisfactory. We conclude that this item of $1,150 should be restored by defendants.

Finally it is contended that the court erred in finding that the defendant Uerling must liquidate the corporation without compensation. The trial court found:

"6.   * * * That the assets have been converted into cash which was accomplished by April 4, 1934, only distribution remains necessary, and the compensation hereinbefore allowed to defendants is sufficient to cover all services in connection therewith or subsequent to the dates of August 15, 1935, for defendant Graham, and March 31, 1934, for defendant Uerling."

"8.   That there remains otherwise on hand with the defendants and assets of the defendant company the sum of $2,669.58, cash, in addition to which the defendants Graham and Uerling shall restore and pay said sums of $9,375, $1,731 and $1,175, thus making undistributed assets in the sum of $14,950.58, distributable and payable as follows: To plaintiff $5,232.71; to defendant Graham (which includes also representation of the stock some time held in

the name of Margaret L. Graham) $6,727.75; and to defendant Uerling the sum of $2,990.12."

Evidence was offered of the condition of the company accounts on October 18, 1934. Direct examination of defendant Uerling: "Q. What were the items of the deposits of the company at that time? A. Hastings National Bank, $2,669.58. That's all. Q. That was cash? A. Cash in bank. * * * Q. Then all the assets have been liquidated. A. Yes; everything has been collected." Cross-examination: "Q. Have you performed any services for this company since April? A. I have attended to the collections to this date. Q. Have you received any pay for that? A. Not any. Q. That is a matter to be adjusted at some future time? A. Yes, sir. Q. Have you succeeded in reducing the assets of the company to cash? A. Yes, sir. Q. Without loss? A. Yes, sir." Redirect examination: "Q. Do you know how much has been collected from the assets of the corporation since that date, commencing with April, 1934? A. March 31, 1934, notes receivable, balance, $2,457.20. * * * Q. That was the total amount of the notes which this corporation owned then which hadn't been liquidated? A. Yes, sir."

Uerling was paid a salary until March 31, 1934. He testified that work was more burdensome because collections were harder. The amount of time expended, effort required or value of services performed after March 31, 1934, in making the collections is not shown. It appearing that at the time the decree was entered there was nothing left to be done except to make the distribution in compliance with the order of the court, defendant seems to have been well paid for services rendered. Under the conditions shown by the record, a finding for any further salary or compensation would not be justified. Having reached the same conclusion as did the district court, the decree of that court is

AFFIRMED.